Thank you. And again, my name is Kimberly Weber on behalf of the Petitioner Union. And your honors, this case is here before you today because of the board's intransigence on this issue of unilateral changes to dues checkoff in right-to-work states. The key issue before this court today is not whether the board was free to overrule Lincoln Lutheran or whether the board may flip-flop its position on Bethlehem Steel generally. The question is whether the board has appropriately re-implemented the Bethlehem Steel exception in Nevada, a right-to-work state. And the answer is no. And I will focus my argument today on three points. One, the Ninth Circuit has already ruled that applying Bethlehem Steel in right-to-work states is arbitrary. Second, the explanation proffered by the board in this case is not Bethlehem Steel. Third, the rule is contrary to the principles of the Act as recognized by nearly 70 years of board precedent. So starting with the Ninth Circuit's previous ruling, which I will refer to as the Hacienda case because it had the same name as this one. And primarily I will be referring to the 2011 Hacienda case. Now the Hacienda line of cases was the first time that a circuit court has been presented with the question of whether dues checkoff is an exception to the doctrine against unilateral changes in right-to-work states. No other circuit has ruled on this issue. Now over the years, the Ninth Circuit squarely presented this question to the board three times. What is the board's rationale for excluding dues checkoff from the unilateral change doctrine in the absence of union security? And the board flatly failed to respond. It could only cite to Bethlehem Steel and a couple of cases applying that case without any rationale. And the Ninth Circuit in 2011 rejected this reasoning as arbitrary. The panel did leave a door open. It said that the board could adopt a different rule that was one, rational and two, consistent with the act. But that's not what the board did here. It repudiated the ruling of this court and readopted the exact same rule. The board has been defying the Ninth Circuit authority in this area for almost 20 years now. Turning to the second point, Bethlehem Steel. Well, wait a minute. You say 20 years. Wasn't Bethlehem Steel in effect until the Lincoln-Lutheran case in 2015? Yes, your honor. Less than 20 years. No, when I was referring to Bethlehem to 20 years, I was talking about how long the Ninth Circuit specifically has been asking the board why Bethlehem Steel should apply to right-to-work states. The first time and also the first time that the board ever applied Bethlehem Steel to a right-to-work state was in 1988 in the Tampa Sheet Metal case. And it did so in a footnote without any explanation. And seven years later, the General Counsel issued a complaint stating that the board stating that an employer in a right-to-work state could not unilaterally seduce checkoff. So at most, in right-to-work states, there was seven years of trust in a footnote without any right-to-work states could unilaterally seize checkoff. And going back to Bethlehem Steel, to your honor's point, this is the long-standing case, but it was written for union security states. And the Bethlehem Steel board was very clear in 1962 that its reasoning for its ruling on union security. Now, the board insists that this Bethlehem Steel rule applies even in right-to-work states because it is a creature of contract. That is what the current board now says. Now, the foundation of this creature of contract rationale is that dues checkoff cannot exist prior to a CBA. The board assumes this without citation, even though both statutory law and the not required for dues checkoff. The section of the Act, Section 302, C4. You can also take a look at the board's decisions in Tribune Publishing and other, which are cited in the briefs. But let's assume, in arguendo, that an employer would not bestow a benefit upon a union without a collective bargaining agreement. The contract creation rule is still inconsistent with what the board reviewed were contractual provisions benefiting the union. It was a union grievance procedure and union super seniority. And the 1962 board found that the doctrine against unilateral changes applied. The employer could not unilaterally change the CBA provisions. They had to continue by operation of law past the expiration of the CBA or the collective bargaining agreement. Excuse me, your honors. Now, the board has argued in the brief that Bethlehem Steel said union security and dues checkoff required contract. And petitioner agrees insofar as union security does require a contract. But the problem is, as I have already mentioned, Bethlehem Steel conflated union security and dues checkoff. And the new Ninth Circuit has already ruled that there is no reason to apply Bethlehem Steel to right-to-work states. Counsel, if I could ask, would you help us? What is the theory behind the difference between right-to-work states and union security? Why should there be a difference? Yes, your honor. So the ultimate difference comes down to voluntary unionism. So in a union security case, or state, excuse me, an employer in a union may agree that all of the employees in the represented unit have to be members of the union. And they can agree, at least among private employers, that they must even pay some amount of dues. Maybe not the full amount, but some amount of dues. And so they are in fact forced to pay some amount of dues in order to remain members of the union and in order to remain employed by their employer. Now in right-to-work states, this coercion is simply absent. There is no forcing of any employee to join a union. Any employee can work within the bargaining unit and can decide on their own whether or not to join the union and whether or not they want to give dues. In Nevada, at Valley Hospital, in this case, every single employee who authorized a dues check-off authorization did so completely voluntarily because it was their choice and their right to support a union. Was there no union pressure to do that? Certainly the union encourages everyone in the union in the unit to join, but that is a matter that is outside of the statutory law. Now the reason that union security is considered to expire with the contract is because the statutory law actually says that it must, that under the statutory provisions, the union security provisions cannot exist. So if contract creation is not the rationale of Bethlehem Steel, what is the rationale of Bethlehem Steel? Where does the line get drawn? Yes, and Your Honor, what I have argued in the brief is that the reason that all of the exceptions to the unilateral change doctrine exist is because of statute. Every single one of the five exceptions that are clearly recognized because of statute must expire at the very time that the collective bargaining expires. They automatically expire. Now the board is trying to create this third category of mandatory subjects with dues check-off that does not automatically expire, like every other exception, but does not continue like every other subject. Instead, the employer has the right to decide whenever it wants that it can terminate dues check-off. This would create a third category. Counsel, you mentioned five categories. I have a list, arbitration, no strike, no lockout, management rights, and union security. Are those the five you're talking about? Yes, Your Honor. And you're representing to us that all of those five are statutory rights. Well, yes, what I am saying is that each and every one of those cannot exist past the expiration of the contract because of a statute. For instance, the right to lockout is an economic weapon that the Supreme Court has recognized that Congress wanted employers to have so long as the employer has not either agreed to waive that right in a contract or because the statute says that the no lockout provisions can no longer exist because the statute does say that after the expiration of an agreement, any waiver of a no lockout will cease to be valid. So that is what the statute says. And that is consistent. Each and every one of the five, as explained in the Petitioner's Open Brief, are exceptions and they expire when the contract expires because of statute. And that is a consistent rule. Ms. Weber, real quick, what relief, this might sound like a basic question, believe me, I have read the materials when I asked this question, but what relief exactly are you seeking from this panel right now? Your Honor, the order must be vacated. Petitioner asks further that the court remand with instruction to find a violation and apply the standard remedy in this case, given the Court's long history of refusing to recognize certain rulings on the issue of dues check-off in Nevada. But what we have ultimately is we have an order applying to a Nevada employer, Valley Hospital, and a Nevada union, the local joint executive board, and it is not rational and it is arbitrary. And so that order must be vacated. And vacate with instructions to, I know you want us to, the home run for you is to assess penalties and all that. I take it to be consistent with Hacienda 3, the case we were talking about, the court there kind of said, you need to do this again. We're going to send you back and you have to explain your answers like you would do in my grammar school. Is that, if you can't get the home run, are you asking for some level of that as an alternative? I think the basic remedy that we are asking is that the order be vacated and remanded. What we do think would be appropriate would be to order and remand with instruction. Counsel, we have a practice in the Ninth Circuit, there are several cases where we sometimes remand without vacater to allow the board to reconsider. Wouldn't that work in this case as well? That is an option before the court, your honor, yes. Very well, thank you. And thank you. If I may, I will reserve the remainder of my time. Very good. Mr. Weitz, when you're ready, you may proceed. Thank you, your honor. Good morning. May it please the court, Eric Weitz on behalf of the National Labor Relations Board. This case involves the board's adoption of a legal rule at the core of its expertise as the administrative agency tasked with interpreting and administering federal labor law. As a result, the board's rule is entitled to deference so long as it's rational and consistent with the act, which is a deferential standard of review. It's well-established and the mandatory subjects of bargaining embodied in a collective bargaining agreement between an employer and the union that has expired are subject to the CAF's unilateral change doctrine, which prevents an employer from unilaterally changing those expired terms pending bargaining with the union. However, it's also very well-established that there is a limited number of well-defined exceptions to this doctrine, which have been accepted for most of the last 60 years, including dues checkoff provisions that for most of the last 60 years the board has held are not subject to the CAF's unilateral change doctrine. In this case, as the board made clear in its decision, it's provided a full explanation for the first time for why dues checkoff is other limited number of exceptions and is an exception even in the right-to-work context. And as the board explained, that's because these limited number of terms of employment are uniquely or exclusively created by contract. And as the board noted, that's because you cannot have a dues checkoff arrangement prior to a contractual agreement between the employer and the union. Counsel, that's where I'm stuck, because it seems to me that there are quite a few others that are created by contracts, such as time off for union reps in the American gypsum situation, union hiring halls in southwest security equipment, union representation, representatives' access to the employer's property and frontier, seniority for union reps, contributions to the union trust fund. How did the board grapple with those cases and distinguish them? Well, your honor, the board did not specifically distinguish those cases in its decision, but I think there's, I guess, a specific and a general response to your question. The first is that the board's overall point is that these limited number of exceptions to the unilateral change doctrine are, in the board's judgment, unique. And the board, you know, has the ability to determine that certain subjects are distinct from other subjects and are uniquely contractual. As the board noted in its decision, the mere fact that a particular term was embodied in a contract, of course, is not what the board is saying here, means something is excluded, as the dissent erroneously alleged. The general response, I think, is that the board did not need to distinguish those cases here because this case was not about the board adopting a new framework for determining what is subject to the unilateral change doctrine or not. The only issue before the board here was whether dues checkoff, in particular, could be subject to this doctrine in accordance with board precedent dating back nearly 60 years. And as a corollary to that, whether the prior board had erred in its Lincoln-Lutheran decision in upsetting the status quo and overruling Bethlehem Steel. So because the only question the board was answering here was how to handle dues checkoff provisions, not reframing what CAST means or what the unilateral change doctrine means, the agency's position is that the board did not need to, you know, re-evaluate every subject under the sun and provide explanations for why all of those subjects are well accepted as being covered by the CAST doctrine, as they have been for decades in board case law. Does that conform with State Farm? Are you suggesting that that would meet the State Farm requirements? In other words, judgment might be sufficient? Well, if I could follow up, your honor, which requirements in particular, just so I understand the question. Well, State Farm talks about a hard-look review and it seems to come down very heavily on rationality. I see. Yes. Well, I think, yes, our position is that that is met here because, for example, this is not a case where the board, there was a decision coming out the other way on this exact same issue. For example, if the board had a decision where it found a violation under similar circumstances and it did not need to, you know, reassess or re-explain itself with all of these other subjects because those subjects were simply not at issue in this case. The only issue in the board's view was whether it used checkoff should again be one of the accepted exceptions to the CAST doctrine, which I emphasize again, it has been for most of the last 60 years and is generally the settled expectations of parties operating under the National Labor Relations Act. You seem to be saying that it was okay for them to just basically go back to the way it was 58 years ago or whatever number of years it is. And I guess the thing I'm having a hard time with is that if the rationale under which that's done conflicts with not everything under the sun, as you said, but five decisions or five subjects in the meantime, how is it that the board gets to just not explain that? Well, I think what the board was saying here, your honor, is that there is this accepted limited number of exceptions. And by providing this rooted in contract, contract creation rationale, what the board was doing was explaining why those exceptions in particular share a commonality. The board was not setting a binary test for determining whether a subject is an exception or not, because as your honors and as the unions point out, there are other terms of employment, which in a certain sense are created by contract, which the board does not dispute and it's well established are covered by the unilateral change doctrine. What the board was doing here is pointing out, acknowledging that its prior decisions had to fully explain its rationale for excluding dues checkoff. So, for example, in the Bethlehem Steel case, as the board concedes, there was multiple premises to that decision, one of which was the fact that dues checkoff provisions in non-right-to-work states could be said to implement union security. But there was also a contractual element that the board even then was relying on. However, the board simply had not fully explained that, which is why when the issue was raised for the first time in the Hacienda One case in 2000, the board now concedes the board did not explain in that case what its rationale was. And that's why on appeal to this court multiple times, the court held that the board had failed to explain itself. Contrary to the union's arguments, we would dispute the notion that in Hacienda Three, this court held that the board's application of this exception in a right-to-work state is itself unreasonable or irrational. Rather, the court held that the board had not explained itself. And in Hacienda Three, the court noted that due to the unusual posture of the case where the allegation had been pending for 15 years at that point, that the court did not see fit to remand again to the board. And so in the context of that case in particular, the court essentially found a violation on its own. And in the court's view, did not see a rationale for excluding dues checkoff arrangements in right-to-work states. But the court did not hold that the rule in general or as a policy matter is itself irrational. And as a result, the fact that the board has now responded to the court and attempted to provide this reasoning is not foreclosed by national record precedent. And in fact, the only inquiry now is whether the explanation the board has provided is rational and consistent with the act, which we of course admit it is. Mr. Weiser, would you respond to, oh, I'm sorry. I was just going to ask, would you respond to Ms. Weber's point that she relies on the theory that all of these other exceptions are statutory? Yes, your honor. As the board points out in this decision, in this case, Valley Hospital, the notion that these exceptions exclusively involve waivers of statutory rights was a quote in the board's view after the fact recharacterization that appeared for the first time in the Lincoln Lutheran decision. And so the board has rejected that understanding of what these exceptions share in common and has instead adopted or found in in precedent dating back decades that what they share in common is in fact instead this contract creation dynamic. So the union has cited no court, certainly no Supreme Court precedent mandating this waiver of statutory rights, understanding of what the exceptions share in common. Thank you. So Mr. Weiss, let me, let me just pop into the question. So I want to get back to the question. Judge O'Scanlan started with, because to me, that is really the question of the case. Let's say I agree with you about Hacienda 3, that it did not say that the board can't implement the rule that it wants to implement now. It just said, you need to explain it better. But we've given the board now has had a chance to explain it better. And I imagine Ms. Weber and Rabal is going to say, well, the board's explanation is simply because I told you so. But that's the rationale, because I told you so. That's why we can do it. That's why we wanted to do it, because I told you so. Rather than getting to the elephant in the room, Judge O'Scanlan's question is, how is it different than these other categories? And I understand from the briefing, the argument as to how it's different. Whether we agree with it or not is a different issue, but where in the board decision does it make that, the argument you made today, you made in your brief, where does the board say that in the opinion? Well, Your Honor, first I would just clarify, we certainly did not intend to add a response to that in the briefing. That was not in the board's decision. I think the answer to the question is, first of all, the board found that dues checkoff is, you know, uniquely rooted in contracts in the way that impliedly these other subjects are not, because it's not been, you know, it's the board accepts, and it has been the case for decades that these are covered by the unilateral change doctrine. And in the board's view, it did not need to distinguish these cases in its decision here. And I think that's really the only answer I can give to the court, because there is no further distinction beyond that in the board's actual decision. However, for the reasons previously discussed, I think, you know, the agency's position is that that was ultimately the question is simply whether the board's conclusion here is rational and consistent with the acts. And it was not simply, you know, creating this exception out of thin air. Dues checkoff has been an accepted exception to the Cass doctrine, again, for most of the last 60 years. And that only was changed for the first time, well, technically for the first time in the board's 2012 WKYC TV, and then I got wiped out, was vacated. So essentially, for the first time in Lincoln Lutheran in 2015. And so again, that was a primary motivating consideration for the board here was it was faced with reassessing whether Lincoln Lutheran was correctly decided. And for additional reasons explained in the decision, the board separately found that And then in face of this sort of secondary or perhaps primary question of whether in general dues checkoff is subject to the Cass doctrine or is an exception, the board found that it is an exception, as has been the case for decades, because it shares in common with these other exceptions that in the board's view and its expert judgment, it is uniquely rooted in contract, which impliedly, some of these other subjects are not insofar as it's accepted that they're covered by the Cass doctrine. And then I take I take it one of the kind of the baseline arguments you're making is, is that it is it's okay to do what the board did, because it's been done this way for so long, that set up a certain status quo. And that alone is sufficient to satisfy your burden in this administrative law area. I think is that one of the prime? Well, Your Honor, we're not we're not suggesting that that alone would be sufficient. So, for example, in the Hacienda cases, this court did clearly hold that simply the passage of time is not sufficient to render a rule rational or justified. I think the key distinction there, if the court looks back at the board's decisions in the Hacienda cases, was that starting with Hacienda one, the board simply said this has been our rule and did not provide an explanation. And that is why the court found that's not sufficient. And you cannot just say this has been the case and we're not going to explain it. I think the distinction is here. The board clearly made an effort and in our view, rationally explained for the first time what, you know, logically unites these exceptions and why, even in the right to work context, due checkoff arrangements are an exception to the Cass doctrine. Um, and I see that I'm over time. I'm happy to entertain any further questions from the court. Any other questions for my colleagues? All right. Thank you very much. Miss Webber, a little over two minutes. Thank you. The board says that it simply wants to return to Bethlehem Steel generally. But this case and its order addresses a violation in a right to work state. And the issue here, as the board has admitted today, that this is the very first time that the board has attempted to explain why Bethlehem Steel applies to right to work states. So there's nothing to return to. This is new. And to explain this new rationale, the board did need to extinguish the long history of creatures of contract that cannot be unilaterally changed. The board cannot simply ignore its own relevant precedent. It has to explain why it is not controlling. And similarly, the board has not explained why dues checkoff in right to work states is similar to the five exceptions. The board says there's ample reasons why the five exceptions are not statutory, but it offers no reasons. Finally, I will address the point that the board made in its decision when it tried to force dues checkoff into a waiver argument to make it similar to the five exceptions by saying that the employer waived its right to refuse to agree to dues checkoff. But that reasoning applies to every single provision of a collective bargaining agreement, save minimum wage and anti-discrimination. So that is the exception that would swallow the entire doctrine. And again, the board had no answer to that argument in its response. The board's decision and order below is not consistent with the act. It is not rational, and it has previously been found to be arbitrary by the Ninth Circuit. And the petitioner asks that the court does vacate this order and remand with instruction. Thank you very much, and thank you, Ms. Weber. Thank you, Mr. White. Thank you both for your excellent advocacy in this case. We really appreciate good lawyers. So this matter has been submitted. We'll call the part 1A or 2.0, whatever you want to call it, the next case, SIU Local 1107 versus NLRB. So that's Mr. Cohen and Mr. Jotes.
judges: O'scannlain, Owens, Kennelly